172 So. 655

WALKER v. GRAHAM et al.

6 Div. 901.

Supreme Court of Alabama.

Feb. 18, 1937.

Rehearing Denied March 4, 1937.

W. A. Denson, of Birmingham, for appellant.

Wilkinson & Wilkinson, of Birmingham, for appellees.

THOMAS, Justice.

The suit, by appellant, a member of the partnership known as "Five Mile Barbecue Stand," against appellee Graham, a deputy sheriff, and others, was to recover damages for the wrongful search of the plaintiff's premises by the defendant Graham and other deputy sheriffs.

Demurrers to the several counts (1, 2, and 3) of the complaint as amended, were overruled. Defendants replied with pleas 1 and 3. Plaintiff's demurrer to plea 3 was overruled as answer to counts 1, 2, and 3, and sustained as answer to count 4. Plaintiff refiled a replication to plea 3, and demurrer to the special replication was overruled. Issue being joined, the verdict and judgment was for the defendants.

Counts 1, 2, and 3 were for trespass; count 4, for a wanton wrong, in that the defendant Graham "did wrongfully, maliciously, and without probable cause therefor (under the color of his office), procure a search warrant," known to him at the time of its issue to be false and without foundation of fact. 21 R.C.L. p. 456, § 21.

542

When this case was before the court on former appeal (Walker et al. v. Graham et al., 228 Ala. 574, 154 So. 806), it was held that the replication to plea 3 was good and sufficient, and that count 4 should have been allowed. The pleas and replication on the last trial were the same as those approved on the first hearing. Walker et al. v. Graham et al., supra.

On the last trial the complaint was amended by striking out as a party plaintiff L. C. Walker, leaving only W. L. Walker as plaintiff; by striking out as parties defendant Harry N. Curl, J. Frank Dowis, Willam O. Downs, and United States Fidelity & Guaranty Company, leaving as defendants only R. J. (Bob) Graham and Fidelity & Deposit Company of Maryland, surety on Graham's official bond.

On the last trial, after the witnesses and one of the plaintiffs, L. C. Walker, had testified on direct examination for plaintiffs, and while L. C. Walker was on the stand for cross-examination, defendants' attorney introduced the search warrant in evidence, and without cross-examining plaintiff's witness Walker, rested defendants' case; plaintiff's attorney likewise resting his case. "Upon this evidence and no more the Court charged the jury orally." Defendants requested affirmative charges which were refused. The cause being submitted to the jury, without examination by defendant of any witness whatsoever, or any other testimony, resulted in a verdict for the defendants, from which plaintiff, W. L. Walker, appeals.

The burden of proof under such pleading rested upon the plaintiff. McMullen et al. v. Daniel, 229 Ala. 194, 200, 155 So. 687; Gulsby v. Louisville & Nashville R. Co., 167 Ala. 122, 52 So. 392; Sims v. Kent, 221 Ala. 589, 130 So. 213.

It is further decided that in a joint action against an officer and the surety on his official bond, punitive damages are not recoverable. Such was the pleading as to Graham and the surety on his official bond, made defendants. Holland v. Fidelity & Deposit Co. of Maryland et al., 225 Ala. 669, 145 So. 131; Kilgore v. Union Indemnity Co., 222 Ala. 375, 132 So. 901; Hain v. Gaddy et al., 219 Ala. 363, 122 So. 329. The trial court correctly instructed the jury under the pleading on this phase of the case, and there was no error in giving defendants' charges 14 and 18 duly requested in writing, viz., that the only damages the jury were authorized to award in this case were compensatory damages. Holland v. Fidelity & Deposit Co. of Maryland et al., supra.

The court, in his general charge, defined the issues to be determined, and instructed the jury as follows:

"The plaintiff claims that on account of this search and seizure—I mean this search of his place of business, which was also his home—that it was invasion of his rights and an invasion of his home, and he claims that as a proximate consequence of that wrong, that wrongful search, there, that he was humiliated and chagrined and embarrassed, that there were people there, and that he was embarrassed and chagrined and suffered physical and mental pain and was injured in that regard.

"Now, gentlemen, damages of that character, there is no way to measure. Under the law we have no yardstick to give you gentlemen to determine what would be reasonable compensation for injuries of that character, in event you find for the plaintiff, and it is left to the sound discretion of you gentlemen trying the case to determine from all the evidence in the case what would reasonably compensate the plaintiff for any chagrin, embarrassment or humiliation or physical and mental pain that he suffered as a proximate consequence of the officers coming there on that occasion and making this search."

There was no error in giving defendants' charge No. 12. It stated the law of such a case when referred to the search warrant in evidence, which was in due form and issued by J. G. Brooks, ex officio judge of Jefferson county court of misdemeanors. The process appeared regular on its face, was issued by competent authority, and the deputy sheriff duly receiving the same was justified in executing the search warrant. Sections 10192, 10193, 10197, Code 1923; Walker et al. v. Graham et al., 228 Ala. 574, 154 So. 806.

The replication to plea 3 avers that the warrant that defendant officer swore out was false and without any foundation in fact; that the officer "swore out said warrant solely out of malice and ill-will toward the plaintiffs, and for the purpose of injuring them in their business, well knowing at the time that the matters and things which he swore to in said warrant were untrue and without any foundation of fact." The plural as to the plaintiffs

in this replication was singularized, by amendments and eliminations in the pleading, to W. L. Walker, who testified in his own behalf. The trial court so limited the inquiry of fact as to said Walker by the general charge. Poole v. Fletcher, 233 Ala. 54, 169 So. 868.

Assignments of error 5 to 9, inclusive, relate to the rejection of plaintiff's evidence by the witness Yancey, who testified in substance that he knew the said Walker; was acquainted with the Five Mile Barbecue Stand on the date of October 25, 1930, and stopped there occasionally. Witness was asked, in effect, if he ever smelled any liquor when he went in the barbecue stand; if he saw any signs of drinking around there at any time; if he knew of any liquor being sold there at any time, and of anybody being drunk in that place at any time before this proceeding. The court sustained objection to the question: "From observation, all right, now, then, from what you talked with them in the community there, the general talk of the community, what was that in regard to that stand at that time?" To which there was exception by the plaintiff. Such inquiry was res inter alios acta as to Graham's action, and his and his surety's liability at the time he acted—when he swore out and executed the search warrant. It was not evidence of the nature of the information on which the officer acted in procuring the issue of the search warrant and in the execution thereof. McMullen et al. v. Daniel, supra.

In Gulsby v. Louisville & Nashville R. Co., 167 Ala. 122, 128, 129, 52 So. 392, 394, this court declared:

First, of malice: "*Malice* has been thus well defined by this court: 'Whatever is done willfully and purposely, whether the motive be to injure the accused, to gain some advantage to the prosecutor, or through mere wantonness or carelessness, if at the same time wrong and unlawful within the knowledge of the actor, is in legal contemplation maliciously done.' Lunsford v. Dietrich [93 Ala. 565, 9 So. 308, 30 Am.St.Rep. 79]; Jordan v. Alabama G. S. R. Co., 81 Ala. 220, 8 So. 191. Personal ill will, or desire for revenge, is not essential to the existence of malice as the law views it. Lunsford v. Dietrich, supra."

Second, of probable cause: "*Probable cause* was also defined in Lunsford v. Dietrich, supra, as follows: 'A reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged.' Mere suspicion and belief, even though honestly, bona fide entertained, of the guilt does not, as readily appears, alone, rise to the dignity of affording a basis for probable cause. It is essential that, at the time the oath or affirmation is taken or made, the actor then knew of facts or circumstances such as would have justified a reasonable and cautious man in believing that the accused was guilty. Lunsford v. Dietrich, supra. Less than that cannot be probable cause." 167 Ala. 122, 128, 129, 52 So. 392, 394.

The test of probable cause is whether the information, on which the affiant acted in swearing out the warrant to justify his action in the respects here pertinent, was such as to lead a man of ordinary caution to so act, with impartiality and without prejudice, and with the conscientious belief that such cause existed for the action taken. Union Indemnity Co. v. Webster, 218 Ala. 468, 118 So. 794; Stouts Mountain Coal Co. v. Grubb, 217 Ala. 274, 116 So. 156; Parisian Co., Inc., et al. v. Williams, 203 Ala. 378, 83 So. 122; Boshell et al. v. Cunningham, 200 Ala. 579, 76 So. 937; Lunsford v. Dietrich, 93 Ala. 565, 569, 9 So. 308, 30 Am.St.Rep. 79. We are of the opinion, and hold, that there was no reversible error committed in declining to permit the witness Yancey to answer the several questions to which objections were sustained. McMullen et al. v. Daniel, 229 Ala. 194, 200, 155 So. 687.

The questions which plaintiff sought to ask the witness Green—"Did you ever know of any liquor being sold at that stand at that time or prior thereto at any time?" and "Did you know of any report of liquor being sold at that stand prior to this raid that was made by the deputy sheriffs?"—were of like import to those denied and properly refused to the witness Yancey. To like effect, also, were the questions propounded to the witness Bryant, which were likewise rejected in evidence.

It is not shown that Graham had the information sought to be elicited when he swore out the search warrant. In such action, the main issue is whether the defendant swearing out the warrant had probable cause for such action. And on

the question of probable cause, the plaintiff was entitled to introduce proof of good reputation at the time in question. That is to say, the plaintiff had a right to show the general reputation in that community, at the time in question, of himself and his business on such issue of fact; information which brought to defendant's knowledge the want of probable cause in swearing out the warrant. Shea v. Cloquet Lumber Co. et al., 97 Minn. 41, 105 N.W. 552; Olson v. Tvete, 46 Minn. 225, 48 N.W. 914; McIntosh et al. v. Wales, 21 Wyo. 397, 134 P. 274, Ann.Cas.1916C, 273; McIntire v. Levering, 148 Mass. 546, 20 N.E. 191, 2 L.R.A. 517, 12 Am.St.Rep. 594; Blizzard v. Hays, 46 Ind. 166, 15 Am.Rep. 291; Woodworth v. Mills, 61 Wis. 44, 20 N.W. 728, 50 Am.Rep. 135.

 The witness Bryant was asked: "Tell the jury what you know about the search that took place out there." The court sustained defendants' objection to said question, and the plaintiff excepted. If the ruling was in error, it was without injury. The matter was thereafter introduced by the further examination of that witness by plaintiff, the witness testifying as follows: "I went in the building, this man came in right behind me and immediately began searching; they immediately went to searching. I didn't know what they were searching for, but they went through everything in the store, in the ice box, and behind the goods on the counters, and they stayed there I don't know how long, but I stayed there the whole time they were there. * * * They looked in the show cases and they looked behind the goods stacked on the counters and they looked in some of the soft drink cases they had there stacked up, and then they went into a back room. I don't know what they did back there. I did not hear the searchers say anything there that they had found liquor. I did not see any liquor there. I did not smell any liquor there. I had been a patron there for quite a number of years, I expect from ten years back. * *. * I was acquainted with the reputation of that stand in that community, the reputation of that stand was always good. I was acquainted with these two gentlemen that ran that stand, the Walker brothers, their reputation was always good."

And on cross-examination: "That search was made in the early afternoon. It was before—I think just before two o'clock, I am not sure, but I think so. I think it was between twelve and three o'clock. I drove up to the stand for some sandwiches. They searched the Frigidaire, looked among the counters, under the counters and behind the counters, looked in the show cases, examined some crates or cartons or empty bottles, they went in the back room. I did not see any liquor, and I did not smell any liquor. I don't know that they arrested anybody while I was there, the officers left there before I left. I don't know who else was there. There were several in there, I think. I didn't know who they were."

 It has long been the rule that "The *want of probable cause* is a material averment, and though negative in its form and character, it must be proved by the plaintiff, by some affirmative evidence; unless the defendant dispenses with this proof, by pleading singly the truth of the facts involved in the prosecution." 1 Greenl. Ev. §§ 80, 81, 78; O'Grady v. Julian, 34 Ala. 88, 91. (Italics supplied.) That is, in this action, the onus was on the plaintiff to prove the falsity of the affidavit on which the search warrant was sued out and issued. Such burden did not rest upon the defendants to prove its truth. Mobile Furniture Commission Co. v. Little et al., 108 Ala. 399, 408, 19 So. 443; Flournoy & Epping v. Lyon & Co., 70 Ala. 308, 309; Calhoun v. Hannan & Michael, 87 Ala. 277, 6 So. 291.

The decisions have likened this kind of a suit, with its element of probable cause and its resulting damage—as for the loss of credit—to the wrongful suing out of an attachment, garnishment, or injunction, etc. Bradford et al. v. Lawrence, 208 Ala. 248, 94 So. 103; Mobile Furniture Commission Co. v. Little et al., supra; Pollock & Co. v. Gantt, 69 Ala. 373, 44 Am.Rep. 519; Durr et al. v. Jackson, 59 Ala. 203; Webb et al. v. McFarlin & Co. et al., 177 Ala. 531, 58 So. 453.

 In O'Grady v. Julian, 34 Ala. 88, 89, 91, Judge Stone observed that, "The analogy between suits like the present, and suits for malicious prosecution, is very striking." That is to say, in a suit for malicious prosecution, search, or seizure, the plaintiff may show the extent of his injury, proximately caused by suing out the writ without probable cause; he must show this by competent evidence, having a reasonable tendency to show the natural and probable consequence of the defendant's unwarranted act. We have indicated

that this rule is subject to the limitation that such evidence does not relate to damages which fall within the class catalogued as remote and speculative damages. Pertinent decisions by this court are: Street et al. v. Browning, 210 Ala. 331, 98 So. 203, malicious prosecution; reasonable attorney's fees held an element of recoverable damages. Bradford et al. v. Lawrence, 208 Ala. 248, 94 So. 103, attachment; held debtor may testify as to the effect of an attachment suit on his credit. Parisian Co., Inc., et al. v. Williams, 203 Ala. 378, 83 So. 122, a suit for malicious prosecution, wherein malice and probable cause were defined, and recoverable damages considered. Birmingham Bottling Co. v. Morris, 193 Ala. 627, 69 So. 85, malicious prosecution; held recovery may not be had for a loss of time.

The rule, as applied to remote and recoverable damages in Massachusetts, Minnesota, and Texas, is thus stated: "(1) In an action by partners for damages from the issue of an attachment against them maliciously, and without probable cause, evidence of the disposition subsequently of the partnership property, including the appointment of a receiver thereof, in a suit for dissolution of the partnership, and the loss and shrinkage in the assets on the receiver's sale, is not admissible as such damages are too remote. Cochrane v. Quackenbush, 29 Minn. 376, 13 N.W. 154. (2) So it is error to allow plaintiff to show the course of his business during the nine years before the attachment, during which time his connecting stores had come to have twenty-three departments, and to testify that there had been a steady increase in the business every year, but that the business for the part of the year after the attachment had decreased. Zinn v. Rice, 161 Mass. 571, 37 N.E. 747. (3) A tenant suing for damages for the wrongful issuance and levy of a distress warrant by the landlord could not testify over objection that after service of the distress warrant he could not rent another place in the county, and that he and the members of his family were in bad health, that being evidence of damages too remote and speculative. Streetman v. Lasater (Tex.Civ.App.) 185 S.W. 930." 38 C.J. pp. 495, 496, note 30.

There are many assignments of error—19 to 27, inclusive—as to how the search affected the business receipts, and as to the offer for sale of the business and its good will. Some of the questions were, in nature, a call for speculative damages, and were rightfully denied. O'Grady v. Julian, 34 Ala. 88; Webb et al. v. McFarlin & Co. et al., 177 Ala. 531, 58 So. 453; 7 Alabama Digest, Damages, p. 406, ☜40(1); p. 407, ☜40(2); p. 408, ☜40(3). It was competent, however, for the witness W. L. Walker to testify that he was "acquainted with the value of this sort of property, the good-will of it, at that time"; that patronage "fell off immediately following this search"; and what the property was worth immediately before and immediately after the search. These questions called for answers that were evidentiary and a shorthand rendition of fact, subject to be tested by a proper cross-examination and for the jury to weigh their credibility. Pollock & Co. v. Gantt, 69 Ala. 373, 378, 44 Am.Rep. 519; Bradford et al. v. Lawrence, 208 Ala. 248, 94 So. 103; O'Grady v. Julian, supra; Durr et al. v. Jackson, 59 Ala. 203; 38 C.J. 495, § 186, note 29, and Alabama authorities; 37 A.L. R. 660, note.

In Bell et al. v. Seals Piano & Organ Co., 201 Ala. 428, 429, 78 So. 806, 807, a suit for damages for wrongfully suing out an attachment, it was declared:

"Credit is a conclusion of fact, partly based on opinion founded more or less on reputation (Alabama State Land Co. v. Reed, 99 Ala. 19, 23, 10 So. 238), and partly based on personal observation and knowledge as to such collective fact (Alabama G. S. R. Co. v. Yarbrough, 83 Ala. 238, 242, 3 So. 447, 3 Am.St.Rep. 715). A witness having knowledge of the collective fact of credit may testify to the inferential fact of damage thereto, but not to the extent of the damage; this can be arrived at only by a consideration of all the facts and circumstances having the effect to damage such credit. Trammell v. Ramage, 97 Ala. 666, 11 So. 916.

"It is a legitimate ground for the recovery of actual damages that there has been an injury to one's credit. Donnell v. Jones, 13 Ala. 490, 48 Am.Dec. 59; Goldsmith v. Picard, 27 Ala. 142; Durr v. Jackson, 59 Ala. 203, 209; Flournoy v. Lyon, 70 Ala. 308. It has been held that 'loss of credit and business are the natural consequences of suing out an attachment against a merchant on account of fraud, and may be averred in the complaint.' Marx Bros. v. Leinkauff, 93 Ala. 453, 9 So. 818; Flournoy v. Lyon, supra; Hundley v. Chadick, 109 Ala. 575, 580, 19 So. 845."

546

In this application of the rule there is pertinent analogy to the elements of damage sought to be shown in the instant case. See the many authorities from this and other jurisdictions collected in the note to 54 A.L.R. p. 451, and the note to 37 A.L.R. p. 660. In Donnell v. Jones et al., 13 Ala. 490, 508, 509, 510, 48 Am.Dec. 59, Mr. Justice Chilton observed: "The injury complained of should not only be, the natural, proximate, legal result, or consequence of the wrongful act, as we have shown above, but must affect the joint business, or trade of the partnership, and injury to the private feelings of the individual partners, is clearly not the proper subject of inquiry in this suit; such was the decision of the court in the case of Haythorn v. Lawson, 3 Car. & P. 196, and is sustained by the elementary writers. Coll. on Part. 402, 403; Story on Par. 368, § 257; Carey on Par. 94. What joint injury should be considered as the natural and proximate consequence of wrongfully and maliciously suing out the attachment, upon the ground that the plaintiffs in the court below were about fraudulently disposing of their property, and the seizure and levy upon their goods? It is most obvious that no step could be more effectual, or better calculated to ruin the reputation of the firm, to prostrate its credit, and injure the joint business, than the act complained of. Was the estimation in which the firm was held in the community, as being honest and fair in its dealings, impaired? Was their joint credit injuriously affected? Was their business stopped, and their merchandise injured, and sales prevented? All these we regard as proper subjects of inquiry by the jury, and as constituting legitimate sources of damage."

Such were the pertinent inquiries in the instant case.

 There was evidence that at the time the reputation of the stand and its proprietors in that community was good. The plaintiff, as a witness, testified that during the two years he ran this business, and at the time of the execution of the search warrant, no liquor was kept or sold at such place and in that business, and that when the search was made no liquor was found on the premises. This made out a prima facie case for plaintiff, shifted the burden of proof to the defendants, and required them to go forward with the evidence. Absence of evidence to the contrary justified the submission of the questions of fact to the jury. The defendants did not offer other evidence than the affidavit and search warrant, which were not sufficient to meet the prima facie case made by plaintiff. For this failure, and the exclusion of plaintiff's evidence as we have indicated, there was error in overruling plaintiff's motion for a new trial.

The judgment of the circuit court is therefore reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.

On Rehearing.

THOMAS, Justice.

While, as observed in McMullen et al. v. Daniel, 229 Ala. 194, 155 So. 687, the return of the search warrant without result was not in itself sufficient to make out a prima facie case of want of probable cause, yet we think the proof offered by plaintiff, as hereinabove outlined, including plaintiff's good reputation of himself and his business in connection with the fact that nothing was found upon the premises in execution of the search warrant, did suffice to make out a prima facie case, and to place on defendant the burden of going forward with proof in rebuttal.

The application for rehearing is therefore overruled.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.